## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAIT TOWERS MANUFACTURING LLC,<br>401 W. Lincoln Ave.<br>Lititz, PA 17543,<br><br>                 Plaintiff,<br><br>   v.<br><br>SMALL BUSINESS ADMINISTRATION,<br>409 3rd Street, SW<br>Washington, DC 20416,<br><br>ISABELLA CASILLAS GUZMAN,<br>Administrator, Small Business Administration,<br>409 3rd Street, SW<br>Washington, DC 20416,<br><br>                 Defendants. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff TAIT Towers Manufacturing LLC ("TTM" or the "Company"), by and through its attorneys, alleges and states as follows:

### INTRODUCTION

1. This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking emergency federal financial assistance unlawfully withheld by Defendants Small Business Administration ("SBA") and its Administrator, Isabella Casillas Guzman.

2. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, as amended, 15 U.S.C. § 9009a, established the Shuttered Venue Operators Grant ("SVOG") Program to provide emergency financial assistance to eligible live entertainment businesses impacted by

the global COVID-19 pandemic.  The SVOG Program is administered by the SBA and Administrator Casillas Guzman.

3.      In early spring 2020, the COVID-19 pandemic, as well as associated restrictions regarding live entertainment, halted TTM's business.  As a live performing arts organization operator, TTM suffered a 74% loss in revenue in the last three quarters of 2020 as compared to the same period in 2019 and the majority of employees were furloughed.  TTM requires an SVOG award to sustain operations and bring back key employees—exactly the purpose of the SVOG Program.

4.      TTM demonstrated eligibility for a SVOG award in its application to the SBA and, following an initial denial, its appeal to the SBA.  The SBA denied both TTM's application and appeal, giving no reason for the initial denial and providing only conclusory statements with the appeal denial and an additional email in April 2022 that fail to explain the agency's reasoning.

5.      SVOG funds are limited, and once the SBA has depleted the appropriated amount through awards, eligible businesses may not be able to receive the emergency assistance.  Thus, even though TTM demonstrated that it is an eligible live performing arts organization operator, it may receive no assistance if SVOG funds are depleted before the SBA corrects the erroneous denial of TTM's application.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA.

7.      Venue lies in this district under 28 U.S.C. § 1391(e)(1).

8.      This Court has authority to issue declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

9. Plaintiff TAIT Towers Manufacturing LLC specializes in the creation, organization, and production of live performances with more than 70% of TTM's revenue coming from production fees. The shows TTM organizes and creates include productions by the Metropolitan Opera, the Peter J. Sharp Theater at Julliard, and the Hale Center Theater in Sand City, Utah, among others.

10. Defendant Small Business Administration is an independent agency of the federal government. The SBA's mission is to help Americans start, build, and grow businesses.

11. Defendant Isabella Casillas Guzman is the Administrator of the SBA and oversees its operations. Administrator Casillas Guzman is sued in her official capacity.

**BACKGROUND**

A. **Shuttered Venue Operators Grant Program**

12. The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act"), signed into law December 27, 2020, included $15 billion for grants to operators of shuttered venues. Pub. L. No. 116-260 § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by providing an additional $1,249,500,000 for SVOG awards. Pub. L. No. 117-2 § 5005(a).

13. SVOG awards may be used for specified business expenses, including payroll, rent, and utility payments, that are incurred between March 1, 2020, and December 31, 2021. 15 U.S.C. § 9009a(d)(1)(A)(i).

14. An eligible entity may receive a SVOG award in an amount equal to 45% of its gross earned revenue in 2019 up to a maximum award of $10 million. 15 U.S.C. § 9009a(c).

15. Eligible entities under the Act include live performing arts organization operators, as well as theatrical producers, live venue operators and promoters, museum operators, motion picture theatre operators, and talent representatives. 15 U.S.C. § 9009a(a)(1)(A).

16. In addition to falling within an eligible business category, to qualify for a SVOG award a business must meet general eligibility criteria including, *inter alia*, that the business was fully operational on February 29, 2020, suffered at least a 25% reduction of gross earned revenue during at least one quarter of 2020 as compared to 2019, and has reopened or intends to reopen. 15 U.S.C. § 9009a(a)(1)(A). The Act lists a number of characteristics that would render an entity ineligible, including, *inter alia*, issuance of securities on a national securities exchange, or presenting live performances of a prurient sexual nature. *Id.* § 9009a(a)(1)(A)(vi), 9009a(a)(1)(B).

17. The Act defines live performing arts organization operators to include an entity that as a principal business activity organizes, promotes, produces or hosts "live concerts" for which there is a ticketed cover charge, performers are paid, and not less than 70% of revenue of the entity is generated through "production fees or production reimbursements". 15 U.S.C. § 9009a(a)(3)(A)(i).

18. The Act specifies that for a live performing arts organization operator (as well as a live venue operator, live venue promoter, or theatrical producer) to be eligible, it must have additional characteristics. The entity must put on events (1) with a defined performance and audience space; (2) that use sound mixing equipment, a public address system, and a lighting rig; (3) for which one or more individuals carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, or box office manager; (4) for which tickets are sold or a cover charge imposed for most performances; (5) that fairly pay artists; and (6) are

marketed through print or electronic publications, websites, mass email, or social media. 15 U.S.C. § 9009a(a)(1)(A)(iii).

**B.     TTM's SVOG Application and the SBA's Denial**

19.   On April 26, 2021, TTM applied for a SVOG award of $10,000,000.

20.   In its application, TTM demonstrated that the Company satisfied the eligibility criteria for a SVOG award. TTM demonstrated that its losses in 2020 exceeded the 25% statutory threshold by submitting income statements for 2019 and 2020. TTM demonstrated that substantially more than 70% of revenue was attributable to production fees and submitted documentation showing that TTM met the other application criteria. TTM also provided the certifications of eligibility required by the SBA's guidance on SVOG applications.

21.   On August 22, 2021, TTM learned from the SBA's portal that its application was denied. The portal's denial notice gave no explanation for the SBA's denial.

22.   On September 3, 2021, TTM submitted an administrative appeal of the denial to the SBA in which TTM changed its eligibility category to live performing arts organization operator from theatrical producer, as permitted by the SBA's procedures.

23.   TTM's application and appeal explained in detail and with supporting documentation how the company meets each of the general eligibility requirements for a SVOG award and each of the specific eligibility requirements for a live preforming arts organization operator. TTM's supporting documentation included (1) venue floorplans designating seating for audience members and stages for performers, (2) evidence of ticketing for events, and (3) media materials for performances, event dates, ticket releases, and prices. Every venue where TTM organized and produced shows was a professional music venue with a public address system, lighting rigs, and sound mixing equipment.

24. On November 9, 2021, the SBA notified TTM by email that its appeal was denied. The email listed a standard set of the reasons an appeal could be denied based on the SVOG Eligibility Matrix, and stated that TTM's appeal was declined "at least in part" based on reasons 10 and 11. Reason 10 is listed as "Did not meet the principal business activity standard for the entity type under which applied." Reason 11 is listed as "Did not meet one or more of the eligibility criteria specific to the entity type under which applied." The email then provided a boilerplate statement:

> Please note the list provided in this email may not be a comprehensive list of reasons for your decline. To receive additional information as to why your SVOG application was declined, please complete this form (direct link: https://forms.office.com/g/B7DeKGgF1z). The SBA will aim to provide this more specific detail on appeal declines once the SVOG initial application reviews are complete.

25. TTM sent an email to the SBA requesting additional information on why TTM's application and appeal were denied.

26. On April 13, 2022, the SBA forwarded an email with a matrix stating that the application was denied because TTM did not "have a principal business activity . . . creating producing performing, and/or presenting live events by performing artists with not less than 70% of earned revenue coming from ticket sales/cover charges, sales of merchandise/food/beverage (incl. alcohol), production fees/reimbursements, and/or nonprofit educational initiatives."

27. The SBA's denial of TTM's appeal is the agency's final decision.

28. The SBA approved SVOG awards for one of TTM's direct competitors, Clair Global Corporation (https://clairglobal.com).

**CLAIMS FOR RELIEF**

29. The courts recognize a strong presumption favoring judicial review of administrative action.

30. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

31. The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

32. The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) and (E), respectively.

33. The SBA is an "agency" whose final actions are reviewable under the APA.

**COUNT I—ARBITRARY AND CAPRICIOUS AGENCY ACTION**

34. TTM realleges and incorporates by reference each of the preceding paragraphs and allegations.

35. A basic requirement of administrative law is that an agency provide the reasons for its decisions. However, the SBA gave no reason for denying TTM's application, and provided only a conclusory decision on TTM's appeal that does not explain the agency's reasoning for denying the appeal.

36. Indeed, the SBA's decision conflicts with the evidence of TTM's eligibility presented to SBA in the Company's application and appeal.

37. The SBA further erred by treating TTM disparately from a direct competitor that were granted SVOG awards. The SBA approved an award of $10,000,000 to Clair Global. Such

disparate treatment only further hinders TTM's ability to compete in the marketplace and adds additional injury to a company aiming to recover from a 74% pandemic-imposed drop in revenue.

38. For each of these reasons, the SBA's denial of TTM's SVOG award request is arbitrary and capricious.

## COUNT II—AGENCY ACTION CONTRARY TO LAW

39. TTM realleges and incorporates by reference each of the preceding paragraphs and allegations.

40. TTM satisfies the Act's general eligibility criteria for a SVOG award and specific eligibility criteria for an award as a live preforming arts organization operator.

41. The SBA's denial of TTM's SVOG award request therefore violated the Act and is contrary to law.

## COUNT III—AGENCY DECISION UNSUPPORTED BY SUBSTANTIAL EVIDENCE

42. TTM realleges and incorporates by reference each of the preceding paragraphs and allegations.

43. The SBA's denial of TTM's SVOG award request is supported by no evidence in the record, let alone substantial evidence. TTM's application and appeal presented evidence that demonstrates TTM's eligibility for a SVOG award.

44. The SBA's denial of TTM's SVOG award request is thus unsupported by substantial evidence.

**PRAYER FOR RELIEF**

For the foregoing reasons, TTM respectfully requests that this Court:

1. Declare unlawful and set aside Defendants' denial of TTM's SVOG award request.

2. Preliminarily and permanently order Defendants to consider TTM's application for a SVOG award consistent with applicable law and the evidence before the SBA.

3. Preliminarily and permanently order Defendants to award TTM $10,000,000 in SVOG funds.

4. Preliminarily and permanently order Defendants to retain appropriations from the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. No. 116-260 § 324) and/or the American Rescue Plan (Pub. L. No. 117-2 § 5005(b)) in an amount sufficient to fund Plaintiff's SVOG initial grant award.

5. Award Plaintiff its costs and reasonable attorney fees; and

6. Grant such other and further relief as the Court deems just and proper.

Dated: May 16, 2022

Respectfully submitted,

/s/ Caroline L. Wolverton
Angela B. Styles
D.C. Bar No. 448397
Caroline L. Wolverton
D.C. Bar No. 496433
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
(202) 887-4000

*Counsel for Plaintiff TAIT Towers Manufacturing LLC*